UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| GARY SCHMALTZ, as Guardian and Conservator of PETER A. SCHMALTZ, | ) ) ) | CIV. 10-5032-JLV |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S SECOND MOTION FOR CHANGE OF VENUE** |
| vs. | ) ) | [Docket 59] |
| WESTERN HORIZONS LIVING CENTERS, d/b/a WESTERN HORIZONS CARE CENTER, | ) ) ) ) | |
| Defendant. | ) ) | |

**INTRODUCTION**

Pending before the court is a renewed motion to transfer venue filed by defendant Western Horizons Living Centers, d/b/a Western Horizons Care Center ("WHLC"). [Docket 59].  WHLC moves the court to transfer the above-captioned case to the United States District Court for the District of North Dakota, Southwestern Division, pursuant to 28 U.S.C. § 1404(a).  Plaintiff Gary Schmaltz, as guardian for his father, Peter Schmaltz, resists the motion.  The district court, the Honorable Jeffrey L. Viken, referred the motion to this magistrate judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A).

1

**FACTS**

Gary Schmaltz brought suit on behalf of his father, Peter Schmaltz, against Western Horizons Living Center, d/b/a Western Horizons Care Center ("WHLC"), for injuries sustained by Peter Schmaltz while he was a resident of the Western Horizons Care Center, a nursing home operated by WHLC in Hettinger, North Dakota.  Jurisdiction is founded on the diverse citizenship of the parties and an amount in controversy greater than $75,000.  See 28 U.S.C. § 1332.  The action arose as a result of incidents alleged to have occurred at the Western Horizons Care Center on September 11, 2009.  For a more complete recitation of the facts alleged, the court refers the reader to its opinion addressing Gary Schmaltz's motion to amend his complaint, which opinion is filed this same day and incorporated herein by reference.

WHLC first submitted a motion to change venue to the Southwestern Division of the United States District Court for the District of North Dakota on September 7, 2010.  See Docket No. 17.  This court, in it's order on WHLC's motion, determined that the court had proper personal jurisdiction over WHLC, that complete diversity existed among the parties, and that this action could have been venued originally in either the District of North Dakota or the District of South Dakota.  See Docket No. 28.  The court also determined that transfer of venue was not warranted under 28 U.S.C. § 1404(a) because WHLC had not presented significant enough factors to tip the balance in favor of

2

transfer.  Id.  Specifically, the court noted that WHLC had not demonstrated definitively where its witnesses were located and whether or not those witnesses were within this court's subpoena power.  Id.  Therefore, this court denied WHLC's motion to transfer without prejudice and noted that WHLC could renew their motion for transfer of venue upon a showing of changed circumstances.  Id.

WHLC has now renewed their motion for a transfer of venue to the District of North Dakota.  See Docket No. 59.  Now that discovery has been conducted, and the places of residence of nonparty witnesses are known, WHLC asserts that key nonparty witnesses are outside this court's subpoena power and that this constitutes a change in circumstances regarding the convenience of witnesses.  See Docket No. 60.  WHLC asserts that this change in circumstances tips the balance in favor of transferring venue in this case. Id.

The additional information provided by WHLC regarding their motion to transfer venue is as follows.  WHLC asserts that Kayla Sorenson and Jessica Doll were the two Certified Nurse Assistants ("CNAs") who assisted Peter Schmaltz to the restroom immediately prior to the incident, and that they are the only persons with direct knowledge of the events leading up to Peter's injury.  Docket No. 21, at 3.  Ms. Sorenson resides in Hebron, North Dakota. The driving distance from Hebron to Rapid City is over 280 miles.  Id. at pages

2-3.  WHLC assert that Ms. Sorenson will testify about the events leading up to and immediately after Mr. Schmaltz 's alleged injury, and about WHLC's procedures and policies regarding work performed at WHLC and care plans for residents, specifically with regards to Peter's care plan.  Id. at page 3.  WHLC also asserts that Ms. Sorenson will testify about proper use of the particular lift used with Peter at the time of his injury and her training as a CNA regarding the proper use of lifts. Id.

WHLC does not have the exact address for Ms. Doll, but notes that Ms. Doll works for Edgewood Vista, a facility in Bismarck, and also continues to work for Dakota Travelers Nurse.  Id. at page 3, n. 1.  Therefore, WHLC believes that Ms. Doll resides in the Bismarck-Mandan area.  Bismarck, North Dakota, is at a driving distance of more than 300 miles from Rapid City.  Id.

WHLC also plans to call Justin Decoteau, another CNA employed by Dakota Travel Nurse, to testify at trial.  Id.  Mr. Decoteau assisted Ms. Sorenson and Roma Schade in addressing Peter's injury immediately after the incident.  Mr. Decoteau resides in Dunseith, North Dakota.  Id.  The driving distance from Dunseith to Rapid City is over 500 miles.  Id. at pages 3-4.  WHLC anticipates that Mr. Decoteau will testify at trial about his training on the use of lifts to transport residents and whether particular residents should be left alone in a lift, and WHLC's procedures and policies regarding work

performed at WHLC and care plans for residents, specifically Peter's care plan. Id. at page 4.

WHLC also plans to have Nicole LaFountain testify at trial.  Id. Ms. LaFountain resides in Belcourt, North Dakota, a distance of more than 500 miles from Rapid City.  Id.  WHLC believes that Ms. LaFountain will testify about the proper use of a lift, based upon her training, and that resident should never be left alone when using a stand-up lift.  Id.

Based on the location of these witnesses, WHLC moves the court to transfer venue from the District of South Dakota to the District of North Dakota.  Docket No. 59.  The federal court for the Western Division of the District of South Dakota sits in Rapid City, South Dakota.  The federal court for the Southwestern Division of the District of North Dakota sits in Bismarck, North Dakota.

## DISCUSSION

WHLC's motion to transfer venue is premised on 28 U.S.C. § 1404(a). The only issue raised in WHLC's renewed motion to transfer venue relates to WHLC's assertion regarding the inconvenience to witnesses that would result by holding the trial in Rapid City.  While this is the only issue briefed by both parties, both WHLC and Mr. Schmaltz incorporated the arguments made in their prior briefs on the original motion to transfer venue.

Because the only issue being discussed in WHLC's renewed motion and in Mr. Schmaltz's response to that motion is the convenience of parties if the case were to remain in Rapid City or be transferred to Bismarck, this court incorporates its findings and conclusions in its order on WHLC's first motion to transfer venue as those findings and conclusions relate to the other factors pertinent to the analysis.  See Docket No. 28.  Thus, the only issue is whether WHLC has demonstrated that, based on the now known location of defense witnesses, that the relevant factors are strong enough to tip the balance in favor of transfer.

Section 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

See 28 U.S.C. § 1404(a)

In general, a section 1404(a) transfer motion "should not be freely granted."  In re Nine Mile Ltd., 692 F.3d 56, 61 (8th Cir. 1982).  To satisfy the "heavy burden" that rests with the movant to show why the case should be transferred, "the movant must demonstrate that the relevant factors weigh 'strongly' in its favor."  Austin v. Nestle USA, Inc., 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009) (quoting Radisson Hotels Int'l Inc. v. Westin Hotel Co., 931 F.Supp. 638, 641 (D. Minn. 1996)).

The Eighth Circuit has directed that any "case-specific factors" relevant to convenience and fairness should be considered to determine whether transfer is warranted.  In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  In considering whether "the interests of justice" are promoted by transfer, the court may consider factors such as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra, Int'l, Inc., 119 F.3d at 696.  "Merely shifting the inconvenience from one side to the other, . . . , obviously is not a permissible justification for a change of venue." Id. at 696-97 (quoting Scheidt v. Klein, 956 F.2d 693, 966 (10th Cir. 1992)).

WHLC argues that transfer is necessary because all of the nonparty witnesses WHLC intends to call, Kayla Sorenson, Jessica Doll, Just DeCoteau, and Nicole LaFountain, would not be subject to the subpoena power of this court as they neither reside in South Dakota or within 100 miles of Rapid City. However, WHLC asserts that each of these nonparty witnesses would be subject to the subpoena power of the North Dakota District Court.

Furthermore, WHLC asserts that live testimony for these key nonparty witnesses is necessary so that the jury can properly address the witnesses'

7

credibility.  WHLC asserts that Kayla Sorenson resides in Hebron, North Dakota, over 280 miles from Rapid City.  It is anticipated that Ms. Sorenson will testify about the events leading up to and immediately after the Peter's injury.  WHLC does not know where Ms. Doll currently resides, but asserts that she continues to work in Bismarck and likely resides in that area.  WHLC anticipates that Ms. Doll will also testify about the events leading up to an immediately after Peter's injury.

As for Mr. DeCoteau, who assisted in addressing Mr. Schmaltz's injury after his accident, he resides in Dunseith, North Dakota, a distance of over 500 miles from Rapid City.  WHLC asserts that Mr. Decoteau will testify about his training on the use of lifts to transport residents and whether particular residents would be left alone in a lift.  Finally, Ms. LaFountain, an employee of Western Travel Nurses, resides in Belcourt, North Dakota, a distance of over 500 miles from Rapid City.  WHLC anticipates that Ms. LaFountain will testify about the proper use of a lift, based on her training, and that a resident should never be left alone when using a stand-up lift.

WHLC speculates that these nonparty witnesses will not willingly come to trial because WHLC is asserting that they are responsible for the injuries suffered by Mr. Schmaltz.  See Docket No. 74 at page 6.  However, it is unclear whether or not these parties would voluntarily appear.  In assessing the impact of these witnesses on the transfer determination, "the court must examine the

8

materiality and importance of the[ir] anticipated testimony." <u>Reid-Walen v.</u>
<u>Hansen</u>, 933 F.2d 1390, 1396 (8th Cir. 1991).

Mr. Schmaltz argues that Ms. Sorenson, Ms. Doll, Mr. DeCoteau, and
Ms. Lafountain are not key nonparty witnesses and that their testimony may
be admitted through deposition testimony.  Neither Mr. DeCoteau nor
Ms. LaFountain were involved with Peter's injuries.  Mr. Schmaltz asserts that
Mr. DeCoteau assisted others only after Peter was injured.  Furthermore,
Mr. Schmaltz asserts that Ms. LaFountain does not even remember Peter or
that an injury occurred.  <u>See</u> Docket No. 68-2 (LaFountain Depo. at pages 13,
16).  WHLC asserts that these parties are necessary to testify as to the proper
use of a mechanical lift and that residents should never be left alone when
using a stand-up lift.

It is clear that Mr. DeCoteau and Ms. LaFountain reside outside this
court's subpoena power.  However, under these circumstances, it does not
appear that the credibility of Mr. DeCoteau nor Ms. LaFountain is at issue.
Furthermore, their proposed testimony appears cumulative and it does not
appear that their testimony is such that live testimony would be required.
Thus, the court finds that as to Mr. DeCoteau and Ms. LaFountain, deposition
testimony would be adequate if Mr. DeCoteau and Ms. LaFountain will not
willingly appear at trial.  <u>See</u> Fed. R. Civ. P. 32(a)(4)(b) (providing that the

deposition of a witness may be used in lieu of live testimony if the court finds the witness is more than 100 miles away from the place of trial).

As to Ms. Sorenson and Ms. Doll, WHLC asserts that they are "responsible, at least in part, for any alleged injury" to Peter.  See Docket No. 60 at page 6.  WHLC asserts that because of this, Ms. Sorenson's and Ms. Doll's testimony and credibility is an important issue for the jury. Mr. Schmaltz asserts that Ms. Sorenson and Ms. Doll are not key witnesses because WHLC would be liable for their conduct under the "borrowed servant rule."  See Docket No. 68 at page 6.  WHLC argues that the "borrowed servant rule" is not applicable in this case and that WHLC is not liable for any negligence on the part of Ms. Sorenson and Ms. Doll.  See Docket No. 74 at page 4.  WHLC is not certain whether Mr. Sorenson and Ms. Doll will appear voluntarily at trial.  See Docket No. 74 at page 6.  However, WHLC speculates that because they are hostile witnesses they are not likely to voluntarily appear.  Id.

It appears that Ms. Sorenson's and Ms. Doll's testimony is material to this case.  Ms. Sorenson and Ms. Doll were the CNAs who assisted Peter into the restroom.  Both Ms. Sorenson and Ms. Doll assert that they were ordered by Roma Schade, the WHLC charge nurse, to leave Peter in the restroom and attend to other resident.  See Docket Nos. 61-1 (Sorenson Depo. at page 15); 61-2 (Doll Depo. at page 11).  WHLC asserts that Ms. Schade was unaware that

10

Peter was in the restroom and denies that she ordered Ms. Sorenson and Ms. Doll out of the restroom.  See Docket No. 75-1 at pages 50, 80).  Thus, the credibility of Ms. Sorenson, Ms. Doll, and Ms. Schade will be an issue for the jury to decide.  Although live testimony may be preferable, Rule 32 clearly permits the deposition testimony of a witness to be used when the witness resides outside the court's subpoena power.  See Fed. R. Civ. P. 32(a)(4)(b)  Thus, WHLC could provide the testimony of Ms. Sorenson and Ms. Doll by video deposition.

"Sheer numbers of witnesses will not decide which way the convenience factor tips."  Terra Int;l., Inc. v. Miss. Chem. Corp., 119 F.3d 688, 696 (8th Cir. 1997).  Furthermore, "merely shifting the inconvenience from one side to the other" is not a "permissible justification for change of venue."  Id. at 696-97.

Mr. Schmaltz argues that the medical care providers in Rapid City who cared for Peter immediately upon his arrival here are outside the subpoena power of the District of North Dakota, should the court transfer the case to that district.  This, he argues, favors denial of the transfer motion as it would merely shift the burden from WHLC to Mr. Schmaltz.

To the extent WHLC claims it and its witnesses will be inconvenienced by litigating in South Dakota, the assertions presently before the court demonstrate that Mr. Schmaltz and his witnesses will be at least equally inconvenienced by litigating in North Dakota.  Furthermore, the showing made

11

by WHLC is insufficient to overcome its "heavy burden" to show that the inconvenience factor weighs strongly in favor of transfer.  <u>Austin</u>, 677 F. Supp. 2d at 1137 (quoting  <u>Radisson v. Westin</u>, 931 F.Supp. at 641).

In a prior order, the court found that the inconvenience to the parties did not weigh strongly in favor of WHLC's motion to transfer.  <u>See</u> Docket No. 28 at page 17.  Mr. Schmaltz has a right, as the injured party, to attend his own trial if he so chooses.  To require Mr. Schmaltz to travel to Bismarck, North Dakota, would require him to make arrangements for medical care and assisted living for himself while in North Dakota for the trial and would constitute an unfair shifting of the burden.  Even if this court were to find that the convenience factors weigh in favor of a North Dakota forum, however, the cannot say that they so overwhelmingly favor North Dakota as to outweigh the other factors considered by this court in it's prior order.  <u>See</u> Docket No. 28.  WHLC can provide the testimony of Ms. Sorenson, Ms. Doll, Mr. DeCoteau, and Ms. LaFountain by written or video deposition if WHLC determines that these individuals will not appear voluntarily at trial.

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the defendant WHLC's second motion to transfer venue (Docket No. 59) is denied.

12

**NOTICE TO PARTIES**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  Id.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court

Dated March 12, 2012.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

13